**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DAVID ANNUNZIATO

              Plaintiff,

                                    **MEMORANDUM OF**
                                    **DECISION AND ORDER**
                                    12-CV-3609 (ADS)(AKT)

      -against-

COLLECTO, INC. D/B/A EOS CCA

              Defendant,
-------------------------------------------------------------X
**APPEARANCES:**

**Joseph M. Mauro, Esq.**
*Attorney for the Plaintiff*
306 McCall Ave.
West Islip, NY 11795

**Brian L. Bromberg, Esq.**
*Attorney for the Plaintiff*
40 Exchange Pl., Suite 2010
New York, NY 10005

**Zeldes, Needle & Cooper, P.C.**
*Attorneys for the Defendant*
1000 Lafayette Blvd.
Bridgeport, CT 06601
    By:  Jonathan D. Eliot, Esq.
          Dominic Spinelli, Esq., Of Counsel

**SPATT, District Judge.**

On July 19, 2012, the Plaintiff David Annunziato (the "Plaintiff") filed a complaint

seeking redress for the alleged illegal practices of the Defendant Collecto, Inc. d/b/a EOS CCA

(the "Defendant") in connection with the collection of a debt allegedly owned by the Plaintiff in

violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq ("FDCPA").

Presently before the Court is a motion by the Plaintiff for an order permitting this case to proceed as a class action against the Defendant pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23. Also before the Court is the Plaintiff's motion to amend the complaint pursuant to Fed. R. Civ. P. 15. For the reasons that follow, the Court grants the Plaintiff's motions.

## I. BACKGROUND

David Annunziato (the "Plaintiff") is a citizen of New York State and allegedly owes a debt to the New York Institute of Technology ("NY Tech"). This debt is allegedly for the purchase of household and personal products and for school tuition. The total debt alleged is $4,609.29. However, according to the Plaintiff, he has not attended NY Tech in more than sixteen years and, therefore, "[t]he alleged debt, if owed, is well outside the time period permitted to report the alleged debt to any consumer reporting agencies." (Compl., ¶ 15.) Consequently, the alleged debt should not be reported on the Plaintiff's credit reports.

On an unspecified date, NY Tech hired the Defendant to collect the debt allegedly owed by the Plaintiff. To that end, on or about May 16, 2012 the Defendant sent a form letter to the Plaintiff appearing on the letterhead of EOS CCA. (Compl., Ex. A.)

The form letter that the Defendant sent to the Plaintiff details the debt as follows:

> Principal: $3,226.50
> Interest: $ 0.00
> Fees/Coll Costs: $1,382.79
> Other Accounts: $0.00
> **Total Due:** $ 4,609.29

(Compl., Ex. A.) The Plaintiff contends that the demanded "Fees/Coll Costs" were not incurred by either NY Tech or the Defendant. Instead, according to the Plaintiff, these costs were unearned, unreasonable and bear no relation to any actual damages incurred by NY Tech or the Defendant for any goods or services supplied by them.

Thus, the Plaintiff takes issue with the form letter because it includes the additional Fees/Coll Costs, which he believes was arbitrarily created by NY Tech and the Defendant in order to collect unearned fees and to intimidate the Plaintiff into paying the "Principal" for fear that he would otherwise be liable for more Fees/Coll Costs. The Plaintiff claims that the Defendant was aware that neither NY Tech nor itself incurred the Fees/Coll Costs.

The form letter at issue also includes the following paragraph:

> As a result of your continued failure to address the above reference account, we have informed our client that you have not paid this debt nor made arrangements to pay. Please be advised that our client has the right to take further steps to collect this account.

(Compl., Ex. A.) The Plaintiff claims that "[s]uch statement is false and deceptive, in that neither the Defendant nor NY Tech have the right to take 'further steps' to collect the alleged debt." (Compl., ¶ 24.) In this regard, according to the Plaintiff "no 'further' steps [] are legally permitted," because "the alleged debt is outside the applicable statute of limitations, and the alleged debt is outside the period a debt can be reported on the Plaintiff's credit reports. (Compl., ¶ 24.) As such, the Plaintiff suggests that the form letter was designed to intimidate the Plaintiff "into paying a debt that is past the applicable statute of limitation, and past the time period to legally report onto the Plaintiff's credit report." (Compl., ¶ 24.)

Form letters substantially similar or materially identical to the one that the Defendant sent to the Plaintiff were also allegedly sent to hundreds of consumers in New York. The Plaintiff alleges that by sending these letters the Defendant violated numerous provisions of the FDCPA, including 15 U.S.C. §§ 1692 e, e(2), e(5),e(10), f, f(1) and g. The Plaintiff defines the class as

> consisting of all persons who, according to [the Defendant's records: (a) have mailing addresses within New York State; and (b) within one year before the filing of this action; (c) were sent a collection letter in a form materially identical or substantially similar to [the form letter sent by the Defendant to the Plaintiff];

3

and/or (d) were sent a written communication demanding
"Fees/Coll Costs" in an amount that was unearned[,] unreasonable,
unconscionable, and/or bore no relation – reasonable or otherwise
– to any actual damages incurred by NY Tech or [the Defendant
for any goods or services supplied by NY Tech and/or [the]
Defendant for any work performed by or on behalf of NY Tech
and/or [the] Defendant; and (e) which was not returned by the
postal service as undelivered.

(Compl., ¶ 31.)

On April 3, 2013 the Plaintiff moved to file an amended complaint.  In the amended

complaint, the Plaintiff clarified that EOS CCA, which as stated above, was used on the

letterhead for the form letter, "had no corporate structure" and was "merely a d/b/a/ of . . . the

Defendant."  (Amend. Compl., ¶¶ 19, 20.)   The Plaintiff further clarified that the Defendant was

licensed as a debt collection agency by the New York City Department of Consumer Affairs and

was a Massachusetts business corporation registered with the New York State Department of

State.

In addition, the amended complaint explained that the Fees/Coll Costs" represented forty-

two percent of the Plaintiff's principal debt and thirty percent of his total debt due.  Finally, the

amended complaint streamlined the definition of the class as follows:

[The class shall] consist[ ] of: (a) all individuals who have mailing
addresses within New York State; and (b) within one year before
the filing of this action; (c) were sent a collection letter in a form
materially identical or substantially similar to [the form letter sent
by the Defendant to the Plaintiff]; (d) which was not returned by
the postal service as undelivered.

(Amend. Compl., ¶ 38.)  The amended complaint did not otherwise alter the facts asserted in the

original complaint.

## II. THE PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

As the Plaintiff's unopposed motion to amend his complaint primarily seeks to refine the proposed class definition and renders moot some of the Defendant's arguments in opposition to the Plaintiff's motion to class certification, the Court will consider it first. In this regard, Fed. R. Civ. P. 15 (a) governs a motion to amend a complaint and states, in relevant part, as follows:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given as justice so requires.

See also Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002). Leave to amend should be denied only because of undue delay, bad faith, futility or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court. Aetna Cas. And Su. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603–04 (2d Cir. 2005); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente, 310 F.3d at 258; see also Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). The test then with respect to futility, is whether or not the proposed amendment states a claim upon which relief can be granted. DeFazio, 2006 WL 4005577 at *1; see also Lucente, 310 F.3d at 258. A complaint therefore is futile when it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In deciding whether a complaint meets this threshold, the Court is required to accept the material facts alleged in the complaint as true and draw reasonable

inferences in the plaintiffs favor.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).

In this case, the Plaintiff's amended complaint addresses the Defendant's argument that there are ambiguities related to "Fees/Coll Costs" section of the class certification definition contained in the original complaint.  In this respect, the Plaintiff's proposed amended complaint redefines the class definition with the aim that the class encompass 1288 customers who were sent materially identical form letters imposing a 42% collection fee on the principal.  The Plaintiff also alleges that EOS CCA was an alias of the Defendant and that the Defendant was a licensed debt collection agency.

As the Plaintiff's amendments do not substantially alter the Plaintiff's factual allegations and the Court finds that these factual allegations are sufficient to state a claim that is plausible on its face, the amended complaint is not futile.  As such, the Plaintiff's motion to amend the complaint is granted and the Court will proceed to consider the Plaintiff's motion for class certification using the amended complaint

### III. THE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**A. Legal Standard for Class Certification**

Before certifying a putative class, the Court must determine (1) whether the class meets the four Rule 23(a) requirements of numerosity, commonality, typicality and adequacy; and if so, (2) whether the class satisfies one of the three categories listed in Rule 23(b).  See Brown v. Kelly, 609 F.3d 467, 476 (2d Cir. 2010); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008); City of Livonia Employees' Ret. Sys. v. Wyeth, No. 07 Civ. 10329 (RJS), 2012 U.S. Dist. LEXIS 134854, at *4 (S.D.N.Y. Sept. 17, 2012).  "The party seeking class certification bears the burden of establishing by a

preponderance of the evidence that each of Rule 23's requirements has been met." Myers v.

Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010).

As the Supreme Court recently observed:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule--that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc . . . [S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and [] certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.

Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, __, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374, 390

(2011) (citations and internal quotation marks omitted); see also Secs. Litig. v. Gen. Reinsurance

Corp. (In re Am. Int'l Group Inc.), 689 F.3d 229, 237 (2d Cir. 2012); Oakley v. Verizon

Comm'ns., Inc., No. 09 Civ. 9175 (CM), 2012 U.S. Dist. LEXIS 12975, at *34 (S.D.N.Y. Feb. 1,

2012) (holding that while "[t]he certifying court should not make any factual findings or merits

determinations that are not necessary to the Rule 23 analysis, . . . where merits issues cannot be

avoided they must be addressed"). Thus, "the United States Supreme Court has made it clear

that courts cannot certify classes where Rule 23 requirements are not met, and should not contort

the requirements in order to certify." Oakley, 2012 U.S. Dist. LEXIS at *35.

However, in deciding certification, courts must still take a liberal rather than a restrictive

approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise

broad discretion when determining whether to certify a class. See Flores v. Anjost Corp., No. 11

Civ. 1531 (CM), 2012 U.S. Dist. LEXIS 85171, at *20-21 (S.D.N.Y. June 19, 2012); Pecere v.

Empire Blue Cross and Blue Shield, 194 F.R.D. 66, 69 (E.D.N.Y. 2000). Further, "[t]he

dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the

merits, but rather whether the requirements of Rule 23 are met." <u>Kowalski v. YellowPages.com,</u>

LLC, 10 Civ. 7318 (PGG), 2012 U.S. Dist. LEXIS 46539, at *37 (S.D.N.Y. Mar. 31, 2012).

**B. As to Whether the Plaintiff Meets the Requirements of Fed. R. Civ. P. 23**

To qualify for class certification, the Plaintiff must first prove that the putative class

meets the four threshold requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4); <u>see also</u> <u>Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.,</u>

659 F.3d 234, 251 (2d Cir. 2011).   As set forth below, the Court finds that the Plaintiff has met

all the Rule 23(a) requirements.

**1.   Numerosity**

Rule 23(a)(1), known as the numerosity requirement, requires that the class be "so

numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

"Impracticable," in this context, does not mean impossible; instead Rule 23(a)(1) only requires

that, in the absence of a class action, joinder would be "simply difficult or inconvenient."  <u>Russo</u>

<u>v. CVS Pharm., Inc.,</u> 201 F.R.D. 291, 294 (D. Conn. 2001); <u>see also</u> <u>Robidoux v. Celani,</u> 987

F.2d 931, 935 (2d Cir. 1993).

"There is no magic minimum number that will breathe life into a class, but generally,

courts will find a class sufficiently numerous when it comprises forty or more members."  <u>Russo,</u>

201 F.R.D. at 294 (citations and internal quotation marks omitted).   "As plaintiff bears the

burden of demonstrating numerosity, he must show some evidence of or reasonably estimate the

number of class members." Id. at 295.  Therefore, while "evidence of exact size or identity of class members is not required," a plaintiff cannot rely on "pure speculation or bare allegations" in order to demonstrate numerosity.  Flores, 2012 U.S. Dist. LEXIS at *25 (citations and internal quotation marks omitted).

However, "in assessing numerosity[,] a court may [also] make common sense assumptions without the need for precise quantification of the class."  Russo, 201 F.R.D. at 294; see also Flores, 2012 U.S. Dist. LEXIS at *24–25.  In addition, particularly when a class is not obviously numerous, the Court should consider the following factors: "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members."  Robidoux, 987 F.2d at 936; see also Pecere, 194 F.R.D. at 70; Martin v. Shell Oil Co., 198 F.R.D. 589, 590 (D. Conn. 2000).

In this case, the Plaintiff asserts that numerosity has been met, because the Defendant has represented that it sent materially identical form letters to approximately 1288 consumers within the State of New York.  Allegedly, on their face, these form letters contained the same FDCPA violations, including (1) the unearned Fees/Coll Costs and (2) falsely threatening to take "further steps" when such action was time-barred.

Nevertheless, the Defendant counters that many of the individuals who received the form letter may not be members of the class either because their debt was still within the statute of limitations when the Defendant sent the form letter or because they had entered into an underlying agreement with NY Tech authorizing collection charges.  In this regard, the Defendant cites to this Court's previous decision in Weissman v. ABC Fin. Services, Inc., 203

9

F.R.D. 81 (E.D.N.Y. 2001) (Spatt, J.).  In <u>Weissman</u>, the plaintiff alleged that the defendant violated the FDCPA by mailing her a standard form letter that contained prohibitory language. <u>Id.</u> at 81.  She argued that simply because the defendant had used a standard form letter, the numerosity requirement had been met.  <u>Id.</u> at 84.  However, this Court rejected the plaintiff's argument, finding that numerosity could not be met when it was of "pure speculation" and "unsupported by a single factual allegation."  <u>Id.</u>

Here, the Defendant has admitted that it sent out 1288 form letters to consumers in New York.  Thus, unlike the <u>Weissman</u> plaintiff, who "d[id] not even allude to the basis from which to estimate how many consumers received similar notices," the Plaintiff, relying on the Defendant's admission, provides a reasonable estimate of the size of the class.  Although the Defendant raises concerns about the proposed class being over-inclusive, the Court finds that, with respect to numerosity, the Plaintiff has satisfied his burden.  Indeed, the fact that some of the proposed class members may turn out to not be members of the class does not prevent the Court from finding that the class is sufficiently numerous, as it is still likely that a significant portion of the 1288 consumers (1) had debts that fell outside the statute of limitations and (2) did not enter into an underlying agreement with NY Tech authorizing collection charges.  As stated above, the Court does not need evidence of exact class size or identity of class, <u>see</u> <u>Robidoux</u>, 987 F.2d at 935, and may "make common sense assumptions without the need for precise quantification of the class," <u>Russo</u>, 201 F.R.D. at 294.  Accordingly, as the Court may reasonably infer that the 1288 consumers are similarly situated, the Court finds that Fed. R. Civ. P. 23(a)(1)'s numerosity requirement has been met.

### 2. Commonality

"To satisfy the commonality requirement of Rule 23(a)(2), there must be 'a showing that common issues of fact or law exist and that they affect all class members.'" Kowalski, 2012 U.S. Dist. LEXIS at *41–42 (quoting Leone v. Ashwood Fin., Inc., 257 F.R.D. 343, 351 (E.D.N.Y. 2009)). However, the individual circumstances of the class members can differ without precluding class certification, so long as "the common questions are at the core of the cause of action alleged." Vengurlekar v. Silverline Techs., Ltd., 220 F.R.D. 222, 227 (S.D.N.Y. 2003); see also Kowalski, 2012 U.S. Dist. LEXIS at *42 (holding that "[t]he commonality standard does not mandate that the claims of the lead plaintiff be identical to those of all other plaintiffs" but does "require[] that plaintiffs identify some unifying thread among the members' claims that warrants class treatment") (citations and internal quotation marks omitted).

In its recent decision in Wal-Mart Stores Inc. v. Dukes, the Supreme Court held that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," as opposed to simply "suffer[ing] a violation of the same provision of law." Dukes, 131 S. Ct. at 2551. In other words, "[t]heir claims must depend upon a common contention . . . that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. Thus, "[w]hat really matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. at 2551 (citations and internal question marks omitted) (emphasis in original); see also Flores, 2012 U.S. Dist. LEXIS at *31.

Here, in opposition to the Plaintiff's motion for class certification, the Defendant contends that the commonality requirement of Fed. R. Civ. P. 23(a)(2) has not been met because the Court will be required to (1) make individual determinations as to the time period of when the proposed class members were students at NY Tech and (2) make individualized damage assessments. However, "[c]ommonality may be met even though individual circumstances differ, so long as class members' "'injuries derive from a unitary course of conduct.'"" Ramos v. SimplexGrinnell LP, 796 F. Supp. 2d 346, 354 (E.D.N.Y. 2011) (quoting Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 338 (S.D.N.Y. 2004) (in turn, quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997))). In the Court's view, the Plaintiff has established commonality because the resolution of this action will rest on whether or not the Defendant's alleged conduct in sending the form letters violated numerous provisions of the FDCPA. Further, while the Court finds, as explained below, that some of the Defendant's concerns are suitable considerations with respect to the appropriateness of the Plaintiff's proposed class definition, the Court does not believe these concerns prevent a finding that the commonality requirement has been met.

### 3. Typicality

Rule 23(a)(3) requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux, 987 F.2d at 936. Known as the typicality requirement, this provision is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation. Vengurlekar, 220 F.R.D. at 227. However, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor

variations in the fact patterns underlying individual claims."  Robidoux, 987 F.2d at 936–937;

see also Vengurlekar, 220 F.R.D. at 227 (holding that "the mere existence of individualized

factual questions with respect to the class representative's claim will not bar class certification")

(citations and internal quotation marks omitted).

In this case, Plaintiff alleges that the Defendant directed the same unlawful conduct

toward the Plaintiff and the proposed class by allegedly sending to all proposed class members

identical form letters which improperly imposed a 42% collection fee and deceptively threatened

to take "further steps" in debt collections.  Thus, in litigating this case, the Plaintiff and class

members will set forth the same claims based on the alleged FDCPA violations in the form

letters.  As such, the Court finds that the typicality requirement is met.

To the extent the Defendant argues that there might be a need for individualized

determinations with respect to (1) whether the debt was time-barred and (2) whether any

proposed class members entered into an underlying agreement with NY Tech authorizing the

collection fee, again the Court will consider many of these concerns when it reviews the

proposed class definition.  In addition, the Defendant contends that it "may possess a defense

against proposed class members who failed to utilize the specific statutory debt dispute

validation procedure set forth in the FDCPA (15 U.S.C. § 1692g) as required before seeking

relief in court based on the claim that the debt in question is not owed."  (Def. Opp., pg. 15.)  In

this regard, the Defendant cites to Bleich v. Revenue Maximization Group, Inc., 233 F. Supp. 2d

496 (E.D.N.Y. 2002), a case in which "[t]he plaintiff disputed the validity of the debt," but "did

not take advantage of the statutory debt validation procedure set forth in the Collection Letter."

Id. at 498.  Granting summary judgment in favor of the defendant debt collector, the Bleich court

held as follows:

> [W]here a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt. Likewise, a consumer alleging that a debt referenced in a collection letter is not valid, is required to follow the clear and orderly procedure set forth in the FDCPA. Such a consumer may not institute an immediate lawsuit alleging that the letter violates the FDCPA. To allow such lawsuits would discourage use of the detailed statutory procedure. Instead, individuals would be encouraged to resort to litigation (and the prospect of an attorney's fee award) instead of being encouraged to communicate directly with the debt collector to expeditiously resolve their claim. . . . Because [the] [p]laintiff's claim is based only upon the assertion that the debt sought to be collected is not valid, she fails to state an FDCPA cause of action and [the defendant debt collector] is entitled to summary judgment.

Id. at 501.

However, in the Court's view, the holding of the Bleich case does not prevent the certification of a class at this early stage in the litigation. As this Court recently explained in Butto v. Collecto Inc., 10-cv-2906 (ADS)(AKT), 2013 U.S. Dist. LEXIS 45502 (E.D.N.Y. Mar. 29, 2013), "the merits of th[is] purported unique defense are not necessarily relevant at the certification stage[,]" because "[w]hat is relevant and what ultimately drives this analysis is that even if this defense is presumed valid, the existence of such an individualized defense would not preclude class certification." Id. at *27–28. In this regard, as in Butto, the Defendant "has not explained how this potential defense would threaten to become the focus of the litigation." Id. As such, "the Court finds that this unique defense does not overshadow the common issues that dominate this class action proceeding." Id.

Lastly, the Defendant suggests that because their might be a need for individualized determinations with respect to damages, the Plaintiff has not established typicality. However, "[c]ourt have 'routinely . . . concluded . . . that the need for individualized proof of damages

alone will not defeat class certification.'" Petrolito v. Arrow Fin. Servs., LLC, 221 F.R.D. 303, 310 (D. Conn. 2004) (quoting Gunnells v. Healthplan Servs. Inc., 348 F.3d 417, 429 (4th Cir. 2003)). Moreover, "[t]he Second Circuit has recognized that there are a variety of ways for a district court to deal with individualized damages issues that may arise in the course of litigation. Id. (citing In re Visa Check/Mastermoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001)).

Accordingly, "since the violation alleged here – the 'core' of the damages suffered – is the illegal debt collection attempt, whether or not the plaintiff paid and suffered actual damages does not affect his typicality as a class representative." Id. (citing Keele v. Wexler, 149 F.3d 589, 593–94 (7th Cir. 1998)). See also Duling v. Gristede's Operating Corp., 267 F.R.D. 86, 98 (S.D.N.Y. 2010) ("A difference in the amount of damages arising from differing degrees of injury does not preclude either commonality or typicality.") (quoting Vengurlekar v. HSBC Bank, No. 03 Civ. 243 (LTS), 2007 U.S. Dist. LEXIS 37521, at *19 (S.D.N.Y. May 22, 2007)); Lemire v. Wolpoff & Abramson. LLP, 256 F.R.D. 321, 327 (D. Conn. 2009) ("Moreover, a difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality.") (quoting Duprey v. Conn. Dep't of Motor Vehicles, 191 F.R.D. 329, 337 (D. Conn. 2000) (in turn, citing Trautz v. Weisman, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994))); Macarz v. Transworld Sys., 193 F.R.D. 46, 50 (D. Conn. 2000) "[D]ifferences in damages are insufficient to preclude class certification.").

### 4. Adequacy of Representation

Rule 23(a)(4)'s adequacy of representation requirement requires that a plaintiff "also show that the proposed action will fairly and adequately protect the interests of the class," Vengurlekar, 220 F.R.D. at 227, and "serves to uncover conflicts of interest between names parties and the class they seek to represent," Wyeth, 2012 U.S. Dist. LEXIS at *14. See

Vengurlekar, 220 F.R.D. at 227 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.") (citation omitted).

In order to satisfy Rule 23(a)(4), a "plaintiff[] first must demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation." Id. (citations and internal quotation marks omitted). Second, a plaintiff must "show that [he has] no interests that are antagonistic to the proposed class members." Id.

The Court finds that the Plaintiff has satisfied both elements under Rule 23(a)(4). First, the Plaintiff's counsel have extensive experience in litigating matters under the FDCPA both in class actions and in individual suits. Nevertheless, the Defendant, relying on Kingsepp v. Wesleyan Univ., 89 Civ. 6121 (DNE), 1992 U.S. Dist. LEXIS 13399 (S.D.N.Y. Sept. 3, 1992), claims that the Plaintiff's counsel are inadequate. In Kingsepp, the plaintiff brought an antitrust action on behalf of himself and all others similarly situated against twelve non-profit institutions of higher education. According to the plaintiff, the defendants had conspired to fix the price of tuition and financial aid. However, the Kingsepp court found that the plaintiff had not satisfied the adequacy of class counsel requirement of Rule 23(a)(4), therefore preventing the certification of a class.

The Defendant argues that the instant action is similar to Kingsepp because similar to the plaintiff's counsel in Kingsepp, the Plaintiff's counsel in this case "quoted large portions of text in the place of argument, analysis or discussion" when bringing his motion for class certification. Id. at *3. However, the Defendant overlooks that the Kingsepp court also based its finding on the fact that the attorney had previously been accused of "lawyer misconduct," including the failure to obey judges' orders, failure to heed judges' instructions, and filing frivolous motions.

Id. at *2.  No such misconduct by the Plaintiff's counsel has been suggested here.  Moreover, the court in Kingsepp addressed how counsel had "avoided any analysis or discussion of a number of weighty arguments raised by defendants in opposition to class certification."  Id. at *3.  Conversely, in this case, the Plaintiff's counsel addressed the opposition in its reply papers.  In addition, they provided an amended complaint that even further addressed the concerns raised by the Defendant.

The Defendant also argues that the Plaintiff is an inadequate representative for the class on the grounds that the Plaintiff has not made any showing with respect to his familiarity with the action or his understanding of the comparative merits of class and individual actions.  However, in Harrison v. Great Springwaters of America, Inc., 96-CV-5110,1997 U.S. Dist. LEXIS 23267 (E.D.N.Y. June 18, 1997), the court suggested that "courts generally certify proposed representatives 'as long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon his lawyers' advice.'"  Id. at *22 (quoting Kaplan v. Pomerantz, 131 F.R.D. 118, 122 (N.D. Ill. 1990)).

In the Court's view, in his declaration, the Plaintiff satisfies his burden by demonstrating his basic familiarity with tis action.  Further, the Plaintiff has no known conflicts with any of the class members and is actively involved in the prosecution of his action.  Therefore, the Plaintiff has satisfied the adequacy requirement of Fed. R. Civ. P. 23(a)(4).  See In re Playmobil Antitrust Litigation, 35 F. Supp. 2d 231, 243 (E.D.N.Y. 1998) ("One court has summarized the adequacy requirement thusly: 'Absent any conflict between the interests of the representatives and other [proposed class members], and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.'") (quoting

Guarantee Ins. Agency Co. v. Mid Continental Realty Corp., 57 F.R.D. 555, 565 (N.D. Ill. 1972)).

## C. As to Whether the Plaintiff Meets the Rule 23(b)(3) Requirements

Once a plaintiff satisfies the four Rule 23(a) requirements, he must then also prove that the putative class is maintainable under at least one of the three categories enumerated in Rule 23(b). See In re Visa Check, 280 F.3d at 133. In this case, the Plaintiff seeks class certification under Rule 23(b)(3). A putative class is maintainable under Rule 23(b)(3) when "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). See In re Am. Int'l Group Inc., 689 F.3d at 239. As set forth below, the Court finds that the Plaintiff has met the Rule 23(b)(3) requirements.

### 1. Predominance

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" in order to "ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Myers, 624 F.3d at 547 (citations and internal quotation marks and alterations omitted). Thus, while the commonality requirement of Rule 23(a)(2) mandates that common questions of law or fact exist among the putative class members, the predominance requirement of Rule 23(b)(3) is more stringent and requires that such common questions be the focus of the litigation. See Continental Orthopedic Appliances, Inc. v. Health Insurance Plan of Greater New York, Inc., 198 F.R.D. 41, 44 (E.D.N.Y. 2000). Accordingly,

"the requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Myers, 624 F.3d at 547 (citations and internal quotation marks omitted).

In this case, the common question presented is whether the form letters sent by the Defendant violated numerous provisions of the FDCPA. In the Court's view, the non-common questions, such as the question of actual damages, are not more substantial than the common question of whether the form letters were illegal. As such, predominance has been satisfied.

### 2. Superiority

"The second prong of Rule 23(b)(3), commonly referred to as the superiority element, requires the court to examine whether a class action is superior to other methods of adjudication." See Vengurlekar, 220 F.R.D. at 228. Four factors the Court should consider in determining whether a class action is the superior method of adjudicating a putative class' claim are provided in Rule 23(b)(3):

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). See also Oakley, 2012 U.S. Dist. LEXIS at *49-50.

Here, "it appears the prosecution of this case as a class action would uphold the Court's interest in a fair and efficient adjudication better than a joint action among the putative class would." Nieves v. Cmty. Choice Health Plan of Westchester, Inc., 08 CV 321 (VB) (PED), 2012 U.S. Dist. LEXIS 37720, at *10 (S.D.N.Y. Feb. 24, 2012). First, the amount of each class

members individual claims is very small so it is not likely that any of them would have a specific interest in individually controlling the prosecution of the action. Further, even though the size of the class reaches 1288 members, because the Plaintiff's attorneys have extensive experience with this type of litigation, the Court finds it would be manageable.

Although the Defendant suggests that class certification is inappropriate because its negative net worth would result in smaller recoveries for the proposed class members than if they brought claims individually, the Plaintiff disputes this assertion. At this early stage of the litigation, the Court finds that it does not need to make a determination with respect to the Defendant's net worth. Moreover, in any event, "notwithstanding the possibility of higher individual recoveries, litigating as a class retains substantial value because it encourages the prosecution of claims en masse that would not be prosecuted individually" and as a result, "[the] [d]efendant's 'de minimus recovery' argument . . . is unpersuasive for reasons explored by other district courts in this Circuit." Kalish v. Karp & Kalamotousakis, LLP, 246 F.R.D. 461, 464 (S.D.N.Y. 2007) (collecting cases). This is because "while the potential for higher individual recoveries exists, realizing that potential requires assuming that each putative class member is 'aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case.'" Id. (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)).

Accordingly, the Plaintiff has satisfied the superiority requirement.

**D. As to the Plaintiff's Proposed Class Definition**

Once a court determines that class certification is appropriate, "[t]he next question is whether the definition of the class proposed by [the] plaintiff[ ] . . . is an appropriate one." Brooklyn Ctr. for Independence of the Disabled v. Bloomberg, 287 F.R.D. 240, 250 (S.D.N.Y.

2012). In this regard, "[u]nder rule 23, district courts have the power to amend class definitions or decertify classes as necessary . . . . 'In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision.'" Id. (quoting Morangelli v. Chemed Corp., 275 F.R.D. 99, 114 (E.D.N.Y. 2011).

In this case, the Plaintiff seeks to certify a class of 1288 consumers in the state of New York who received substantially similar form letters and who claim that by sending these letters, the Defendant violated the FDCPA by (1) imposing an outrageous collection fee of more than 42% and falsely threatening to take "further steps" if the debt and fee were not paid even though the debts were time-barred. (See Pl. Reply, pg. 1–2.) To that end, the Plaintiff proposes the following class definition:

> [The class shall] consist[ ] of: (a) all individuals who have mailing addresses within New York State; and (b) within one year before the filing of this action; (c) were sent a collection letter in a form materially identical or substantially similar to [the form letter sent by the Defendant to the Plaintiff]; (d) which was not returned by the postal service as undelivered.

(Amend. Compl., ¶ 38.)

However, in the Court's view, the Plaintiff's proposed class definition is problematic insofar as it is over inclusive. In this regard, the proposed class definition may include individuals whose debts were not time-barred. The proposed class definition may also include individuals who may have previously entered into agreements with NY Tech authorizing the collection fee. While the Defendant raised these concerns while challenging the Plaintiff's motion for class certification, the Court finds that these concerns can be adequately addressed by modifying the Plaintiff's proposed class definition, so as to clearly exclude those individuals that fall outside the class.

As such, the Court shall certify a class consisting of the following:

> (a) all individuals who have mailing addresses within New York State; (b) who within one year before the filing of this action; (c) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiff; (d) regarding a debt that was time-barred by the applicable statute of limitations; (e) and containing a collection fee that they had not previously authorized by entering into an agreement with NY Tech; (f) which was not returned by the postal service as undelivered.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff's motion to file an amended complaint is granted; and it is further

**ORDERED** that the Plaintiff's motion to certify **this** class is granted; and it is further

**ORDERED** that the Court modifies the Plaintiff's proposed class definition and certifies a class consisting of (a) all individuals who have mailing addresses within New York State; (b) who within one year before the filing of this action; (c) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiff; (d) regarding a debt that was time-barred by the applicable statute of limitations; (e) and containing a collection fee that they had not previously authorized by entering into an agreement with NY Tech; (f) which was not returned by the postal service as undelivered; and it is further

**ORDERED** that the Clerk of the Court is directed to terminate Docket Entry Nos. 13 and 22.

**SO ORDERED.**

Dated: Central Islip, New York
August 9, 2013

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge