UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

David Annunziato
on behalf of himself and all others similarly situated,   No. 12-CV 3609
                                                          (ADS)(AKT)
       Plaintiff,

               -against –

Collecto, Inc.

       Defendant.

---

**Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment**

**TABLES OF CONTENTS**

Introduction ……………………………………………………………….... 1

I. Undisputed Facts ………………………………………………………..… 1

II. Summary Judgment Standard …………………………………………… 7

III. The FDCPA Violations ………………………………………………….. 8
      A. General Standards of FDCPA ……………..………………………… 8
      B. Defendant violated 15 USC 1692f …………………….….………… 9
      C. Defendant violated 15 USC 1692e(2), 1692e, and 1692e(10) ….…… 12

IV. Defendant's Net Worth ………………………………………………… 12

Conclusion ……………………………………………..…………………. 14

Introduction

This case is a certified class action brought pursuant to the Fair Debt Collection Practices Act. (15 USC 1692 et seq.) The Plaintiff and class assert that the Defendant debt collector sent them each a debt collection letter seeking to collect a debt allegedly owed to the New York Institute of Technology (NYIT) for overdue tuition. In the debt collection letters, the Defendant sought not only the principal debt, but an additional 42.85% of that principal, for what the Defendant termed "Fees/Col Costs." The Plaintiffs assert that the Defendant's policy of imposing a 42.85% collection fee violates numerous provisions of the FDCPA.

The FDCPA prohibits the imposition of collection fees, unless the consumer expressly agrees to the fee, or unless a specific law permits the imposition of the fee. *Tuttle v. Equifax Check Servs.*, 190 F.3d 9, 13 (2d Cir. Conn. 1999), and 15 USC 1692f(1).

It is undisputed that none of the class members ever agreed to pay 42.85% of the principal as a collection agency fee. It is also undisputed that there is no law that specifically authorizes the imposition of such a fee. As such Summary Judgment for Plaintiff is warranted.

**I. Undisputed Facts**

Defendant Collecto, Inc. is a debt collector as defined by 15 USC 1692 a(6). **(Defendant's Response to 56.1 statement #1, attached as <u>Exhibit A</u> hereto; Defendant's Responses to Plaintiff's Requests for Admission, response #3 – #7, attached as <u>Exhibit B</u> hereto)** Plaintiff David Annunziato is a consumer as defined by the FDCPA, 15 USC 1692a(3) **(Defendant's Response to 56.1 statement #2 attached as <u>Exhibit A</u> hereto; Defendant's Response to Plaintiff's Request for Admission,**

1

**Response #2, attached as <u>Exhibit B</u> hereto)** The alleged debt Defendant sought to collect from Plaintiff was a consumer debt as defined by 15 USC 1692a in that it allegedly owed for college tuition incurred for personal, family or household purposes. **(Defendant's Response to 56.1 statement #3, attached as <u>Exhibit A</u> hereto; Defendant's Request for Admission, Responses #4 - #6, attached as <u>Exhibit B</u> hereto)**

On or about May 16, 2012 Defendant mailed to Plaintiff David Annunizato the letter attached as Exhibit A to the Plaintiff's Amended complaint in this action, in connection with the attempt to collect the alleged debt. **(Defendant's Response to 56.1 statement #4 attached as <u>Exhibit A</u> hereto; Defendant's Answer to Amended Complaint, Docket Entry 33, paragraph 18)** The letter Defendant sent to the Plaintiff on or about May 16, 2012 contained the following description of the alleged debt:

```
Principal:        $ 3,226.50
Interest:         $     0.00
Fees/Coll Costs:  $ 1,382.79
Other Accounts:   $     0.00
 Total Due:       $ 4,609.29
```

**(See <u>Exhibit C</u> hereto; also see Exhibit A to Plaintiff's Amended Complaint; Defendant's Answer to Amended Complaint, Docket Entry 33, paragraph 18)**

The "Fees/Coll Costs" of $1,382.79 referenced in the letter that Defendant sent to David Annuniziato, is 42.85% of the $3,226.50 "principal" referenced in the letter. **(See <u>Exhibit C</u> hereto)**

The Plaintiff never agreed to pay 42.85% of the "principal" as a collection fee or cost. **(Plaintiff's Affidavit)** The Defendant does not have any documentation that indicates that David Annunizato agreed to pay 42.85% of the "principal" as a collection fee or a collection cost related to tuition at New York Institute of Technology. **(Defendant's Response to Plaintiff's Rule 56.1 statement #7 attached as <u>Exhibit A</u> hereto;**

2

**Deposition of Defendant 9:20 through 12:6; 56.15 through 57.10, attached as Exhibit D hereto)** The Defendant does not have any documentation that indicates that David Annunizato agreed to pay *any* particular percentage of the "principal" as a collection fee or a collection cost related to tuition at New York Institute of Technology. **(Defendant's Response to 56.1 statement #8 attached as Exhibit A hereto; Deposition of Defendant 9:20 through 12:6 and 56.15 through 57.10 attached as Exhibit D hereto)** The Defendant does not have any documentation signed by David Annunziato that indicates that David Annunziato agreed to pay *any collection cost* relating to the alleged debt to New York Institute of Technology. **(Defendant's Response to 56.1 statement #9, attached as Exhibit A hereto; Deposition of Defendant 9:20 through 12:6 and 56.15 through 57.10, attached as Exhibit D hereto)**

      The 42.85% collection cost/fee that the Defendant sought to collect from David Annunziato did not bear any relationship to what it actually cost Defendant to attempt to collect the particular debt allegedly owed by David Annunziato. **(Deposition of Defendant 136.9 through 151:5, attached as Exhibit D hereto)** The Defendant does not know the actual cost they incurred for attempting to collect the specific debt Defendant alleges is owed by David Annuniziato. **(Defendant's Response to 56.1 statement #11 attached as Exhibit A hereto; Deposition of Defendant 136.9 through 151:5, attached as Exhibit D hereto.)**

      Within the one year immediately preceding the filing of this action, the Defendant sent a letter substantially similar or materially identical to the May 16, 2012 letter they sent to David Annunziato, to 331 other former students of New York Institute of Technology seeking to collect allegedly delinquent tuition. **Defendant's Response to 56.1 statement #12 attached as Exhibit A hereto; Deposition of Defendant 64.1 through 66:19, and**

**91:5 through 93:15, attached as <u>Exhibit D</u> hereto; the Class List, Exhibit 8 to Deposition of Defendant, Bates 41-72 attached as <u>Exhibit D hereto</u>; Joint Letter filed with the Court attached as <u>Exhibit E</u> hereto).** Each of the alleged debts that Defendant sought from the 331 former students of New York Institute of Technology was a consumer debt as defined by 15 USC 1692a in that it allegedly owed for college tuition incurred for personal, family or household purposes. **(Defendant's Response to 56.1 statement #13; Class List attached as <u>Exhibit A</u> hereto; Deposition of Defendant 64.1 through 66:19, and 91:5 through 93:15, attached as <u>Exhibit D</u> hereto; Exhibit 8 to Deposition of Defendant, Bates 41-72 attached as <u>Exhibit D</u> hereto; Joint Letter filed with the Court attached as <u>Exhibit E</u> hereto).** Each of the letters that Defendant sent to the 331 other former students of New York Institute of Technology indicated that the consumer owed a "Fees/Coll Costs" that was 42.85% of the "principal" indicated on the letter. **(Defendant's Response to 56.1 statement #14, attached as <u>Exhibit A</u> hereto; Deposition of Defendant 64.1 through 66:19, and 91:5 through 93:15, attached as <u>Exhibit D</u> hereto; the Class List, Exhibit 8 to Deposition of Defendant, Bates 41-72 attached as <u>Exhibit D hereto</u>; Joint Letter filed with the Court attached as <u>Exhibit E</u> hereto)**

The Court has certified a class in this matter that consisting of the 331 students who were sent a collection letter from Defendant that imposed the 42.85% collection fee. **(See Docket Entry #80)**

The Defendant does not have any documentation that indicates that any of the 331 former students to which Defendant sent a letter indicating that the former student owed "Fees/Coll Costs" that was 42.95% of the "principal", ever agreed to pay 42.85% of the "principal" as a collection cost or fee. **(Defendant's Response to 56.1 statement #15**

4

**attached as Exhibit A hereto; Deposition of Defendant 9:20 through 12:6; 56.15 through 57.10, attached as Exhibit D hereto)**

The Defendant, Collecto, Inc. creates and maintains audited financial statements for each fiscal year. **(Defendant's Response to 56.1 statement #16 attached as Exhibit A hereto; Deposition of Defendant, 100.8 through 102.24, attached as Exhibit D hereto)** The most recent Audited Financial Statements is for the fiscal year that ended on February 28, 2014. **(Defendant's Response to 56.1 statement #17, attached as Exhibit A hereto; Audited Financial Statement for year ended February 28, 2014 attached as Exhibit F hereto; and Deposition of Defendant 101:23 – 102:3, attached as Exhibit D hereto)** The Defendant's Audited Financial Statements each year contain a "Balance Sheet" for Collecto, Inc. **(Defendant's Response to 56.1 statement #18, attached as Exhibit A hereto; Audited Financial Statement for year ended February 28, 2014, page 25, attached as Exhibit F hereto;  Deposition of Defendant, 113.2 through 113:23, attached as Exhibit D hereto)** The Defendant's Audited Financial Statement each year are created using "Generally Accepted Accounting Principles", i.e. GAAP. **(Defendant's Response to 56.1 statement #19, attached as Exhibit A hereto; Audited Financial Statement for year ended February 28, 2014, page 3 attached as Exhibit F hereto Deposition of Defendant, 112:5 through 112:18 attached as Exhibit D hereto)** The "balance sheet" in the Defendant's audited financial statements ending on February 28, 2014 has a column that lists the assets and liabilities of Defendant Collecto, Inc. **(Defendant's Response to 56.1 statement #20 attached as Exhibit A hereto; Audited Financial Statement for year ended February 28, 2014, page 25 attached as Exhibit F hereto; Deposition of Defendant, 113:1 through 113:23, attached as Exhibit D hereto)** One of the assets listed on Defendant's balance sheet as of February 28, 2014 is

5

$32,706,493.00 for "Goodwill." **(Defendant's Response to 56.1 statement #21, attached as Exhibit A hereto; Audited Financial Statement for year ended February 28, 2014, page 25 attached as Exhibit F hereto; Deposition of Defendant, 113:24 through 118:25, attached as Exhibit D hereto; Interrogatory Response of Defendant #1 attached as Exhibit G hereto).**

The $32,706,493.00 figure for "Goodwill" listed on the Defendant's balance sheet as of February 28, 2014 was included on this balance sheet as a result of a series of business combinations; specifically, the sale of three companies. **(See Defendant's Response to 56.1 statement #22, attached as Exhibit A hereto; Interrogatory Response of Defendant #1 attached as Exhibit G hereto; Deposition of Defendant, 113:24 through 118:25, attached as Exhibit D hereto)** The $32,706,493.00 figure for "Goodwill" figure listed on the Defendant's balance sheet as of February 28, 2014 was included on the balance sheet per the Generally Accepted Accounting Purposes. **(Defendant's Response to 56.1 statement #23 attached as Exhibit A hereto; Audited Financial Statement, page 3; attached as Exhibit F hereto); Deposition of Defendant, 112:5 through 112:18, attached as Exhibit D hereto; Interrogatory Response of Defendant #1 attached as Exhibit G hereto.)** The total assets listed on the Plaintiff, Collect Inc.'s balance sheet as of February 28, 2014 is $84,959,306.00 **(Defendant's Response to 56.1 statement #24 attached as Exhibit F hereto; Audited Financial Statement for year ended February 28, 2014, page 25 attached as Exhibit F hereto; Deposition of Defendant, 113:1 through 113:23, attached as Exhibit D hereto)** The total liability listed on the Plaintiff, Collecto, Inc.'s balance sheet as of February 28, 2014 is $19,278,862.00. **(Defendant's Response to 56.1 statement #25, attached as Exhibit A hereto; Audited Financial Statement for year ended February 28, 2014, page 25,**

6

attached as <u>Exhibit F</u> hereto; Deposition of Defendant, 113:1 through 113:23 attached as <u>Exhibit D</u> hereto)  The total equity listed on the Plaintiff's Collecto, Inc.'s 2013-2014 balance sheet is $65,680,444.00. **(Defendant's Response to 56.1 statement #26, attached as <u>Exhibit A</u> hereto; Audited Financial Statement for year ended February 28, 2014, page 25 attached as <u>Exhibit F</u> hereto; Deposition of Defendant, 113:1 through 113:23, attached as <u>Exhibit D</u> hereto)**

The Defendant, Collecto, Inc. is a wholly owned subsidiary of EOS Holdings, (USA), Inc. **(Defendant's Response to 56.1 statement #27 attached as <u>Exhibit A</u> hereto; Deposition of Defendant 104:4 through 111:1, attached as Exhibit D hereto)** EOS Holdings (USA), Inc. is a wholly owned subsidiary of EOS International Beteiligungs-Verwaltungsgesellschaft mbH. **(Defendant's Response to 56.1 statement #28, attached as <u>Exhibit A</u> hereto ; Audited Financial Statement for year ended February 28, 2014, page 1, attached as <u>Exhibit A</u> hereto)** Defendant Collecto, Inc. has a Board of Directors that is different than the Board of Directors of EOS Holdings, (USA), Inc. **(Defendant's Response to 56.1 statement #29, attached as <u>Exhibit A</u> hereto; Deposition of Defendant 104:4 through 111:1, attached as <u>Exhibit D</u> hereto)**

### II. Summary Judgement Standard

Summary judgment is appropriate when" the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(b). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the

7

opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56( e).

### III. The FDCPA Violations

#### A. General Standards of FDCPA

The Plaintiffs' claims are all brought under the Fair Debt Collection Practices Act, 15 USC 1692 et seq. which regulates the manner in which debt collectors attempt to collect debts. The FDCPA is a strict liability statute. *Larsen v. JBC Legal Group*, 533 F. Supp. 2d 290 (E.D.N.Y. 2008) To establish a violation of the FDCPA, the intent of the Defendant is irrelevant. *Russell v. Equifax ARS*, 74 F. 3d. 30, 33 (2nd Cir. 1997). The Plaintiff merely needs to show that the Defendant is a debt collector who was collecting a debt when the FDCPA violation occurred. Proof of only one violation is sufficient to support judgment for plaintiff. *Bentley v. Great Lakes Collection Bureau, Inc*., 6 F. 3d 60 (2d. Cit 1993). Because the FDCPA is a strict liability statute, there are no unimportant violations. *Id*. at 63. Additionally, "(b)ecause it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose." *Blair v. Sherman Acquisition*, No. 04 Civ 4718, 2004 WL 2870080 at 2 (N.D. Ill. Dec.13, 2004) as quoted in *Foti v. NCO Financial Systems*, 424 F. Supp. 2d. 655 (SDNY 2006); *Villari v. Performance Capital Mgmt*., 1998 U.S. Dist. LEXIS 11128, 5-6 (S.D.N.Y. July 21, 1998) ["The FDCPA is remedial in nature and should be liberally construed. *Pipiles v. Credit Bureau of Lockport, Inc*., 886 F.2d 22, 27 (2d Cir. 1989). Proof of one violation is sufficient to support recovery under the statute. See 15 U.S.C. § 1692k; *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)"].

The 42.85% fee that the Defendant imposed upon the Plaintiff and the class violated numerous provisions of the FDCPA. In order to add a collection fee, the FDCPA requires that the fee be "expressly authorized" by the consumer; or specifically authorized by law. 15 USC 1692f(1); *Tuttle v. Equifax Check Servs.*, 190 F.3d 9 (2d Cir. Conn. 1999).

The general rule of 15 USC 1692f(1) is that collection fees are prohibited. If an FDCPA defendant seeks to assert one of the two exceptions to the general rule, it is their burden to prove such. *Annunziato v. Collecto, Inc.*, 2014 U.S. Dist. LEXIS 52049 (E.D.N.Y. Apr. 12, 2014) *7; *Seeger v. AFNI, Inc.*, 548 F.3d, 1107, 111 (7th Cir. Wis. 2008); *Hallmark v. Cohen & Slamowitz LLP*, 2014 U.S. Dist. LEXIS 2173 (W.D.N.Y. Jan. 5, 2014); *Bradley v. Franklin*, 739 F.3d 606, 610 (11th Cir. Ala. 2014). It is well established that a party seeking to assert an exception to a statute has the burden of proving that exception. *Meacham v. Knolls Atomic Power Lab*, 554 U.S. 84, 91, 128 S. Ct. 2395, 2400 (2008) (citing *FTC v. Morton Salt Co.* and further holding "[t]hat longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side."); *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948); *Passa v. City of Columbus*, 2007 U.S. Dist. LEXIS 78905 (S.D. Ohio Oct. 24, 2007*); Shepherd v. Liberty Acquisitions, LLC*, 2012 U.S. Dist. LEXIS 94199 (D. Colo. July 9, 2012) *14-15.

**B. Defendant violated 15 USC 1692f**

There is no law that specifically authorized Defendant to impose a fee constituting 42.85% of the principal. As such, the only way for the Defendant to avoid liability is for them to prove that the Plaintiffs "expressly authorized" the 42.85% fee. The Defendant has admitted that they do not have any documentation indicating that any of the students

9

agreed to the 42.85% fee. (**Defendant's Response to 56.1 statement #15 attached as Exhibit A hereto; Deposition of Defendant 9:20 through 12:6; 56.15 through 57.10, attached as Exhibit D hereto**) As such, liability is clear.

The Defendant's opposition appears to be based on the allegation that some of the class members may have signed a statement that said that if they defaulted they could be charged a collection agency fee of 33.33% of the principal. As such, the Defendant argues, their policy was to impose a fee that was 42.85% of the principal. While the problem with their policy is apparent, the Defendant seeks to explain the inflated fee with a theory. The Defendant argues that in order for the original creditor (NYIT) to be paid the entire principal, and in order for the Defendant (Collecto) to get their entire 30% commission, it was the Defendant's policy to impose the 42.85% fee. **(See Affidavit of Defendant's Rule 30b(6) representative, John F. Burns, Jr., Paragraph #6, attached hereto as Exhibit H hereto)** The problem with Defendant's policy, of course, is that the students never expressly agreed to pay 42.85% of the principal as a collection agency fee. At best, some of the students may have signed a statement stating they would pay 33.33% of the principal for such a fee. The statement that some of the students may have signed says the following:

> I agree to pay my debt to NYIT for any amounts due for tuition and fees and other charges. In the event that all charges are not paid when due, I agree to pay to NYIT all of the costs associated with the collection of my delinquent account, which includes the payment to NYIT of the principal sums due, plus all costs, which may also include but are not limited to **collection agency fees constituting 33 percent of the principal balance due** if NYIT engages a collection agency to secure payment, or legal fees constituting 50% of the principal balance due if NYIT engages legal counsel to secure payment, plus any and all interest on the outstanding balance at the maximum legal rate allowed by law, and any and all other costs that will be associated with the collection of the delinquent amounts.

10

**(See Affidavit of Defendant's Rule 30b(6) representative, John F. Burns, Jr., Paragraph #6, attached hereto as <u>Exhibit H</u> hereto) (<u>Emphasis Added</u>)**

In their Rule 56.1 statement **(Exhibit A)** and the Affidavit of Defendant's Rule 30b(6) representative **(Exhibit H),** Defendant argues that they should be permitted to impose what they refer to as the "make whole" method of collection fees. Their theory goes as follows: the original creditor is entitled to the principal balance, <u>plus</u> whatever collection agency fee the collection agency and original creditor decide to impose. The Defendant is arguing that they can simply ignore the fact that the alleged contract limits the collection agency fee to 33% of the principal balance. The Defendant is arguing that the proper percentage to be imposed can be based upon whatever arrangement is set up between the creditor and the debt collector. This is simply erroneous as a matter of law. Under the FDCPA, it is the <u>consumer</u> that must expressly agree to the 42.85% fee, not the creditor, nor the debt collector. Obviously, the consumer is not a party to the contract between the debt collector and the creditor. The arrangement between the debt collector and the original creditor is simply irrelevant to the proper percentage to be imposed. A debt collector simply cannot impose a collection fee to which the consumer did not expressly consent. See *Bradley v. Franklin Collection Serv.*, 739 F.3d 606 (11th Cir. Ala. 2014); *Seeger v. AFNI, Inc.*, 548 F.3d 1107 (7th Cir. Wis. 2008); *Kojetin v. CU Recovery, Inc.*, 212 F.3d 1318, 1318 (8th Cir. 2000); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 406-408 (3d Cir. Pa. 2000), quoting *Tuttle v. Equifax Check Servs.*, 190 F.3d 9 (2d Cir. Conn. 1999) (for the proposition that a consumer must be actually aware of the penalty rate to be said to have "expressly consented" to such rate); *Som v. Daniels Law Offices, P.C.*, 573 F. Supp. 2d 349 (D. Mass. 2008); *Shepherd v. Liberty Acquisitions, LLC*, 2012 U.S. Dist. LEXIS 94199 (D. Colo. July 9, 2012).

None of the students agreed to the 42.85% fee. As such, the Defendant's policy of imposing a 42.85% collection agency fee violates 15 USC 1692f and f(1).

**C. Defendant violated 15 USC 1692e(2), 1692e, and 1692e(10)**

The FDCPA, 15 USC 1692e(2) prohibits the debt collector from misrepresenting the status or amount of the alleged debt. The form letter sent to former students including the 42.85% fee necessarily misrepresented the amount of the alleged debt. As such, the letters were also false and deceptive, violating the preface to 15 USC 1692e, and 15 USC 1692e(10). *Madden v. Midland Funding, LLC*, 786 F.3d 246, 253 (2d Cir. N.Y. 2015); *Bradley v. Franklin Collection Serv.*, 739 F.3d 606 (11th Cir. Ala. 2014); *Kojetin v. CU Recovery, Inc.*, 212 F.3d 1318, 1318 (8th Cir. 2000); *Som v. Daniels Law Offices, P.C.*, 573 F. Supp. 2d 349 (D. Mass. 2008).

**IV. DEFENDANT'S NET WORTH**

Plaintiffs also seeks summary judgment with respect to the "net worth" of the Defendant. The FDCPA, 15 USC 1692k permits successful Plaintiffs to obtain statutory damages of up to 1% of the Defendant's net worth in a class action. The statutory damages in an FDCPA class action can be up to 1% of the Defendant's net worth, with a $500,000.00 cap. See, 15 USC 1692k.

There are no factual issues regarding the Defendant's net worth. The only question relating to the Defendant's net worth is a legal one. The question is whether "good will" that appears on the Defendant's balance sheet as a result of the sale of a business, should be subtracted from the Defendant's net worth.

The Defendant has produced their most recent audited financial statements, which the Defendant created in conformity with Generally Accepted Accounting Principals. (GAPP) The Defendant's net worth appearing on their balance sheet is $65,680,444.00. As one percent of the $65,680,444.00 exceeds $500,000.00, the FDCPA cap of $500,000.00 would be the maximum statutory damages available against the Defendant.

The Defendant however has suggested that they should be entitled to reduce their $65,680.444 net worth by $32,706,493.00. The $32,706,493.00 figure represents the value of the defendant's "good will" appearing on the Defendant's balance sheet. **(See Exhibit F, page 25)** Defendant has disclosed that the $32 million "good will" figure appearing on their balance sheet is the result of the sale of three companies to the Defendant through the years. **(See Exhibit G; Exhibit A, #22; Exhibit D 113:24-118:25)** When the Defendant purchased those other companies, the difference between what the Defendant paid for the target companies, and the value of the target companies' hard assets was properly reflected on the Defendant's balance sheet as "good will." Reporting this "good will" is mandated by "Generally Accepted Accounting Principals" (GAPP). *Sanders v. Jackson*, 209 F.3d 998 , 1001- 1003 (7th Cir. Ill. 2000); and **Interrogatory Response of Defendant #1 attached as Exhibit G hereto.** The Seventh Circuit in *Sanders* held that for the purposes of the FDCPA, net worth is determined by subtracting the assets from the liabilities appearing on a company's balance sheet. The *Sanders* court also stated that GAPP mandates that good will created by the sale of a company (externally created good will) *should be* reported on the company's balance sheet. *Sanders*, 1001-1002. As such, "good will" appearing on the balance sheet is properly included as part of the company's net worth for FDCPA purposes.

13

The Defendant points to *Sanders v. Jackson,* and argues that *Sanders* holds that "good will" is not to be included in the net worth calculation under the FDCPA. *Sanders* however does not say that. What *Sanders* actually says is that <u>internally</u> created good will that <u>does not</u> appear on a company's balance sheet is not part of their net worth. The "good will" at issue in *Sanders* was some unknown amorphous number that the Plaintiff sought to add to the Defendant's assets based upon what the "fair market value" of the Defendant might be. That unknown estimated number did not appear on the company's balance sheet as it was not the result of the sale of a business, and hence it was not reported on the balance sheet pursuant to GAAP. That is not the situation in the instant case. In the instant case, the net worth is properly reported on the balances sheet. The Defendant is now trying to subtract that properly reported "good will" from their book value appearing on the balance sheet.

The *Sanders* Court clearly ruled that the "book value" should be used to determine net worth. The "book value" of the Defendant (i.e. the assets v. the liabilities appearing on the balance sheet) is <u>$65,680,444.00</u>. There is no basis to decrease this figure.

## **Conclusion**

Plaintiffs respectively request that the Court grant summary judgment for the Plaintiff and the class regarding liability, and that the Court hold that for the purposes of assessing the proper statutory damages in this case, the Defendant's net worth is $65,680,444.00.

Dated: August 16, 2015
      West Islip, NY                                    /S/ <u>Joseph Mauro</u>
                                                       Joseph Mauro
                                                       The Law Office of Joseph Mauro, LLC

306 McCall Ave.
West Islip, NY 11795
(631) 669-0921

15