# EXHIBIT D

Case 2:12-cv-03609-ADS-AKT   Document 87-5   Filed 11/16/15   Page 2 of 40 PageID #: 795

Page 1

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF NEW YORK

_____

DAVID ANNUNZIATO,

on behalf of himself and all others similarly

situated,

        Plaintiff,      NO. 2 CV-3609

        - against-

COLLECTO, INC.,

        Defendant.

_____

        December 11, 2014

        1:00 p.m.

        DEPOSITION of JOHN BURNS, held at the

Law Offices of Zeldes, Needle & Cooper, 1000

Lafayette Blvd, Bridgeport, Connecticut, before

Anita T. Shemin, a Licensed Shorthand Reporter

within and for the State of Connecticut.

Electronically signed by Anita Shemen (101-390-802-5107)                d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 2

2

3    JOSEPH MAURO, ESQ.

4    Attorney for The Plaintiff

5    306 McCall Avenue

6    West Islip, New York  11795

7

8    BROMBERG LAW OFFICE, P.C.

9    Attorney for The Plaintiff

10   26 Broadway

11   New York, New York   10004

12   BY:   BRIAN  L.  BROMBERG, ESQ.

13

14   ZELDES, NEEDLE & COOPER, P.C.

15   Attorneys for The Defendant.

16   1000 Lafayette Blvd.

17   Bridgeport, Connecticut

18   BY:  JONATHAN ELLIOT, ESQ.

19   Also Present:

20   Peter Garland, Esq.

21

22

23

24

25

Electronically signed by Anita Shemen (101-390-802-5107)                d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

```
                                                          Page 3

 2                        I N D E X

 3   Examination By                    Page

 4   Mr. Mauro                             4

 5

 6

 7                  **** E X H I B I T S ****

 8   Plaintiff's Exhibit No.    Description    Page

 9   Exhibit No. 1              Notice              4

10   Exhibit No. 2             Letter        11

11   Exhibit No. 3             Acct           19

12   Exhibit No. 4            Document      31

13   Exhibit No. 5            Agreement    49

14   Exhibit No. 7            Document      56

15   Exhibit No. 8            Catalog        59

16   Exhibit No. 9            Summary      61

17   Exhibit No. 10           Summary      63

18   Exhibit No. 11, 12       Reports        96

19   Exhibit No. 13           Interrogatories 111

20   Exhibit No. 14           Responses      129.

21   *****Exhibits Retained by Counsel

22

23

24

25
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 4

```
 1                        John Burns

 2                   (Exhibit one pre marked for

 3    identification, as of this date one)

 4    J O H N    B U R N S

 5                        , a witness having been sworn to

 6        tell the truth was examined and testified as

 7        follows:)

 8    EXAMINATION BY

 9    BY MR. MAURO:

10        Q    Good morning, Mr. Burns, thank you for

11    being here today.

12                   My name is Joseph Mauro and I

13    represent the plaintiffs in a lawsuit entitled David

14    Annunziato versus Collecto and I am going to ask you

15    some questions at a deposition today.

16                   Have you had your deposition taken before?

17        A    Yes.

18        Q    You understand the general ground rules of

19    a deposition, if you don't understand my question

20    please say so.

21                   If you ever need a break, let me

22    know.  When I am asking questions, I would ask that

23    you wait until I finish the question so that we

24    don't speak over each other and talk over one

25    another and I will do the same thing.
```

Electronically signed by Anita Shemen (101-390-802-5107)          d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 9

```
 1                         John Burns
 2   relative to the account, advising us as to the fact
 3   that they have documentation or have a document or
 4   have some basis for adding collection costs to his
 5   account and that we contractually had that
 6   information provided by them and we relied upon the
 7   information that they provided to us as a basis for
 8   including it in the collection effort.
 9        Q    So your client told you that this fee
10   could be collected from Mr. Annunizato, correct?
11        A    The client advised us with not only Mr.
12   Annunizato, but with others, that collection costs
13   were what they were seeking in addition to the
14   repayment of the amount owed based on the account of
15   the individual.
16        Q    And Collecto relied upon that
17   representation of its client in seeking these debt
18   costs, correct?
19        A    Yes.
20        Q    The client that we are referring to is the
21   New York Institute of Technology, correct?
22        A    That is correct.
23        Q    I am going to refer to them as New York
24   Tech if that is okay.
25                   Other than the representation by New
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 10

```
 1                      John Burns
 2    York Tech that these additional collection costs
 3    could be imposed, did Collecto rely upon anything
 4    else in their decision to impose these costs on the
 5    Plaintiff?
 6              MR. ELLIOT:  Object to the form.  He
 7         didn't testify it was their decision.
 8         Q    You want me to restate the information?
 9         A    There is information that I have seen
10    which is documentation from New York Tech that it
11    was disclosed to the students and people enrolling
12    in the school that in the event their account was
13    not paid, there would be collection costs added to
14    their account.  It was not a document that the
15    school had which was shown to me as being a record
16    or evidence of the fact that a disclosure was made
17    to the consumer about collection costs being added
18    to the account if it was unpaid.
19         Q    And did Collecto have that document that
20    you are referring to before they sought to collect
21    this collection cost?
22         A    I don't know when we received the
23    document.  I know it is not uncommon for the
24    marketing person in assigning new clients to ask for
25    new information such as that.  We have a lot of
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 11

```
 1                      John Burns
 2   education clients, I am not certain about each
 3   individual account.
 4      Q    And this document that you are referring
 5   to, what was it, do you remember the name of this
 6   document?
 7      A    I think it was part of the student
 8   handbook.
 9      Q    Okay.
10            And that student handbook, did it
11   refer to any specific percentage that can be
12   collected as a collection cost?
13      A    No, it didn't.
14      Q    Do you know of any documents that indicate
15   that any of the consumers who Collecto was
16   attempting to collect for on behalf of New York
17   Tech, agreed to pay over 40 percent of their
18   principal balance as a collection cost?
19      A    I don't think there was any discussion of
20   the rate with the student, with the creditor.
21      Q    Is that a no to that?
22      A    Once you --
23            MR. ELLIOT:  Object to the form.
24      Q    Are you aware of any document that you
25   have seen that indicates that any consumer who
```

Electronically signed by Anita Shemen (101-390-802-5107)          d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 12

1                           John Burns

2     attended New York Tech agreed with New York Tech

3     that the consumer would pay over 40 percent of their

4     principal as a collection cost if their principal

5     was not paid?

6          A     No.

7                MR. MAURO:  Would you mark that.

8                     (Exhibit 2 marked for

9     identification, as of this date)

10         Q     Mr. Burns, I have placed in front of you

11    what has been marked as Plaintiff's Exhibit two.

12    Have you seen that document before?

13         A     Yes, I have.

14         Q     What is the document?

15         A     It appears to be a copy of the collection

16    letter that was sent to the consumer from my office.

17         Q     The consumer being David Annunziato,

18    correct?

19         A     Yes.

20         Q     Do you see up top on the right where it

21    says, principal 3,229.50?

22               MR. ELLIOT:  Object to the form.

23         A     Yes.

24         Q     Do you see on the top right where there is

25    a reference to principal.

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 56

1                           John Burns

2        A    Where it says, client authorizes

3   collection costs to be added to the accounts and

4   they answered, yes. When it said, if yes, how will

5   the costs be added, and they checked off the block,

6   use the make whole method of assessing collection

7   charges to debtor's account to make sure that the

8   college receives 100 percent of the amount due

9   returned.

10                  Above that is the statement relative

11  to them directing us saying that they are asking

12  that we seek recovery of the collection charges and

13  that further statements as part of their

14  representation.

15       Q    Let me call your attention back to

16  Plaintiff's Exhibit No. 2 which is the collection

17  letter, it should be in front of you there.

18                  Under the agreement that New York

19  Tech and Collecto had on May 16th, 2012, what is the

20  maximum amount of money that Collecto could receive

21  for the collection of David Annunziato's debt?

22       A    The fee rate was 30 percent.

23       Q    It would be 30 percent of what number?

24       A    Of the gross amount total due.

25       Q    Yes?

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

CHAIT DIGITAL                    888-978-4336              chaitdigital.com

Page 57

1                       John Burns

2       A    4,609.29.

3       Q    Do you know of any document where Mr.

4    Annunizato agreed to that fee structure?

5       A    I don't know of any document.

6       Q    Have you ever seen such a document?

7       A    The one that I have never seen, the one

8    that I don't know about?

9       Q    Have you ever seen such a document?

10      A    The one that I don't know about?  No.

11      Q    Have you ever seen such a document where

12   any student of New York Tech has agreed to that fee

13   structure between Collecto and New York Tech?

14      A    Well, I don't think any student would

15   agree to it.  They are not party to the contract.

16      Q    To your knowledge, has any student of New

17   York Tech ever agreed to pay?

18           MR. ELLIOT:  Objection to form. This is

19        clearly outside of the scope of his knowledge.

20        That is a matter between New York Tech and

21        their students, he hasn't seen every document

22        with every student.

23           MR. MAURO:  John, let the witness testify,

24        please.

25      Q    Have you ever seen any document where any

CHAIT DIGITAL                    888-978-4336              chaitdigital.com

Page 64

1                          John Burns

2    identification, as of this date)

3         Q    I have placed in front of you what has

4    been marked as Plaintiff's Exhibit eight.  Do you

5    want to look through that for a couple of minutes?

6         A    Okay.

7         Q    Have you seen this document before?

8         A    I don't believe so.

9         Q    Do you know what that document is?

10        A    I can make a guess, but I think you are

11   trying to identify a class of consumers that would

12   be in similar circumstances as Mr. Annunizato and I

13   believe this is a summary that was prepared with

14   individuals who were formerly students at New York

15   Tech that might fit that criteria.

16        Q    For the record, that is Bates stamped

17   Annunziato production 00041 through Annunziato

18   production 00072.  I will represent that this

19   document was produced by your counsel during the

20   course of this litigation.

21             Calling your attention to the first

22   page to the first two columns, is it fair to say

23   that those two columns indicate the name of students

24   at New York Tech that Collecto sought to collect

25   debts from?

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 65

```
 1                       John Burns

 2      A    I don't have any direct knowledge of that

 3  so I can only -- I have seen this document in its

 4  entirety for the first time.  I know information was

 5  provided, but I did not participate in the

 6  collection of it so for me to comment on what it is

 7  is really difficult for me to do because I can't say

 8  anything with any degree of surety that it is

 9  accurate.

10            MR. MAURO:  Off the record.

11            (Discussion Off The Record)

12            MR. MAURO:  Can you mark this.

13                 (Exhibit 9 marked for

14  identification, as of this date)

15      Q    Mr. Burns, calling your attention back to

16  Plaintiff's Exhibit eight.  Is it fair to say that

17  that contains a list of 464 former students of New

18  York Tech that Collecto sought to collect money

19  from?

20      A    Yes.

21      Q    And the first two columns contain the

22  names of those students, correct?

23      A    Yes.

24      Q    And then the last column on the first

25  page, where it -- you see where it says principal?
```

Electronically signed by Anita Shemen (101-390-802-5107)                d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 66

```
 1                      John Burns

 2       A    Yes.

 3       Q    And the amount contained in that column is

 4  the principal amount of the debt that New York Tech

 5  attempted to collect from the 464 students, correct?

 6       A    Yes.

 7       Q    If I call your attention to page 17 of

 8  that document, you will see that there is another

 9  column called, original coll cost bal.  Do you see

10  that column, Mr. Burns?

11       A    Yes.

12       Q    Is it fair to say that that is the

13  collection cost that Collecto sought to collect from

14  each of these consumers, former students of New York

15  Tech?

16       A    It would appear so.

17       Q    Do you have any reason to believe it is

18  not?

19       A    No.

20       Q    Is it fair to say that the first amount

21  that appears on page 17 identified as $169.29

22  applies to the first student that appears on page

23  one of the Exhibit?

24            MR. ELLIOT:  That may be asking him more

25       than --
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 91

```
 1                         John Burns
 2        will try to wrap it.
 3               MR. ELLIOT:  All right.
 4               (Brief Recess)
 5        Q    So calling your attention back to
 6   Plaintiff's Exhibit No. eight, is it fair to say
 7   that the second to the last column appearing on the
 8   first page is a client number, do you see that.
 9        A    Yes.
10        Q    Is that what you were referring to a few
11   moments ago when you said that there were different
12   clients in --
13        A    It is New York Tech, but there are
14   different categories of debt that they are giving
15   us.
16        Q    Are the different categories of debt that
17   they were giving is that what the different client
18   numbers refer to?
19        A    The client numbers refer to the -- the NYT
20   101 refers to the account, the Perkins loan, that is
21   where the difference in the fee rates may be, the
22   federal government establishes what the rates would
23   be.
24        Q    And the NYT 100, do you know what that
25   refers to?
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 92

```
 1                    John Burns

 2      A    I am not certain.

 3      Q    What other categories of debt did you

 4  collect for New York Tech?

 5      A    There were Perkins loans, tuition

 6  accounts, normally anything else that would be on

 7  the student account, enrollment fees, or other fees

 8  that were charged by the school, whether it is

 9  bookstore, it could be something totally unrelated

10  to the actual tuition part of it.

11      Q    Would New York Tech refer to those by a

12  different client number?

13      A    It could be client number, if there are

14  distinctions of what is being collected, the Perkins

15  loans have a rate structure different from the

16  tuition loans, they would put a different client

17  number on them so it would be applied appropriately

18  to the right account.

19      Q    The contract that we looked at,

20  Plaintiff's Exhibit five, does that govern tuition

21  accounts only?

22      A    This governs any accounts that they place

23  with us.

24      Q    Is it fair to say that the collection fees

25  that were being charged for tuition accounts were
```

CHAIT DIGITAL            888-978-4336            chaitdigital.com

                                                    Page 93

 1                         John Burns

 2    based upon that collection agreement, Plaintiff's

 3    Exhibit five?

 4        A    I believe that would be a correct

 5    statement.

 6        Q    But other accounts, for instance, Perkins,

 7    the collection fees would be calculated based on

 8    something other than that contract, correct?

 9        A    Well, if it is Perkins, it is federal

10    parameters in the Perkins program and they would

11    follow whatever the Perkins program requires.

12        Q    You would not then base the collection fee

13    upon Plaintiff's Exhibit five, the contract,

14    correct?

15        A    I believe so, yes.

16        Q    With the exception of Perkins loans, are

17    there any other situations where the collection fee

18    would not be based upon Plaintiff's Exhibit five,

19    but would be based upon some other calculations?

20        A    I can't answer.  There are Stafford loans,

21    other loan programs, there is a section in this

22    Exhibit seven that talks about all of the various

23    loan types.

24                 If we -- we were engaged to provide

25    collection work for them and gave them a generic

CHAIT DIGITAL            888-978-4336            chaitdigital.com

Page 100

1                        John Burns

2                        (Exhibits 11 and 12 marked for

3    identification, as of this date)

4        Q    Mr. Burns, I have placed in front of you

5    what has been marked as Plaintiff's Exhibit No. 11,

6    do you see that document?

7        A    Yes.

8        Q    Could you tell me what that is?

9        A    It is a copy of the audited financial

10   reports done by the accounting firm of BDO.

11       Q    Is that BDO Siderman (sic)?

12       A    It used to be, so they have shortened the

13   name as many companies have.

14       Q    How was this document created?

15       A    The auditors come in and verify the

16   information at our site of business and do a final

17   report based on their findings.

18       Q    Is the information originally compiled by

19   Collecto and just approved by BDO?

20       A    Yes.  They will test everything.  If there

21   is any difference in any of their calculations, they

22   would recommend adjustments that could be made.

23       Q    Does Collecto work hand-in-hand with BDO

24   in the creation of this documents?

25       A    We have to provide them with all of the

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

CHAIT DIGITAL                    888-978-4336                    chaitdigital.com

                                                                Page 101

1                           John Burns

2     data, yes.

3          Q    Is there anything in this document, any

4     line items that you feel to be inaccurate?

5          A    No, I think it is all pretty much says

6     what it is.

7          Q    Do you have any reason to doubt any of the

8     information contained in Plaintiff's Exhibit 11?

9          A    No.

10         Q    Is this a fair and accurate depiction of

11    the financial condition of Collecto for the years

12    ended February 28, 2004 (sic) and 2013.

13              MR. ELLIOT:  Objection, form.

14         A    This is the report that was produced so

15    the answer is, yes.

16         Q    The information contained in there is

17    based upon the information compiled by Collecto for

18    BDO to audit?

19         A    Correct.

20         Q    It was done during the course of

21    Collecto's business?

22         A    Yes.

23         Q    And this document, Plaintiff's Exhibit 11

24    is the most recent financial statement of Collecto,

25    correct?

CHAIT DIGITAL                    888-978-4336                    chaitdigital.com

Page 102

1                          John Burns

2       A    The most recent audited financial

3    statement is what this represents.

4       Q    Is there a more recent unaudited financial

5    statement?

6       A    Yes.

7       Q    Okay.

8              How often does Collecto create

9    financial statements?

10      A    Every month.

11      Q    Does it contain a balance sheet?

12      A    The interim unaudited financial statements

13   do contain a balance sheet.

14      Q    Is it fair to say that Collecto

15   continuously and routinely creates a financial

16   statement of the company?

17      A    I hope so.

18      Q    And that it is only once a year that

19   Collecto calls upon BDO to audit those financial

20   statements?

21      A    That is correct.

22      Q    This is done everything year in the

23   regular course of business, correct?

24      A    That is correct.

25      Q    For what reason does Collecto create the

Electronically signed by Anita Shemen (101-390-802-5107)                d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 103

```
 1                      John Burns
 2   financial statements?
 3            MR. ELLIOT:  Objection to form.
 4       A    For what reason?
 5       Q    Yes, sir?
 6       A    The measure of how a company is doing is
 7   in its financial reports.  So the ownership wants to
 8   know how is my investment going, how is it handled.
 9   Presumably any owner of a business would want to
10   know what their income is, what their assets are,
11   what their liabilities are.
12       Q    Does Collecto use the financial statement
13   for any other purpose than to inform its owner about
14   the value of the company?
15       A    Well, there are other -- there are clients
16   that want to see the financial information on the
17   company to make sure that we are financially capable
18   of handling their business, that is part of client
19   presentations.  We have banks, lenders that we may
20   interact with or leasing companies that we are going
21   to lease from, or office space, there are numerous
22   applications where people want to know what your
23   financial story is.
24       Q    Insurance?
25       A    We have bonding companies, we are required
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 104

```
 1                        John Burns
 2    to provide audited reports every year for the
 3    bonding companies.
 4         Q    On the first page of Plaintiff's Exhibit
 5    11, is it fair to say that it states that this
 6    financial statement is for a company called EOS
 7    Holdings USA, Inc. and Subsidiary, correct?
 8         A    That is correct.
 9         Q    Who owns EOS Holdings USA, is it the
10    company called EOS International and then a word
11    after that that begins with B?
12         A    Yes.  That is a German company based in
13    Hamburg.
14         Q    For the purposes of?
15         A    We usually identify them as EOS
16    International.
17         Q    For the purposes of this deposition, we
18    will not attempt to pronounce that word, instead I
19    will refer to them as EOS International, is that
20    okay?
21         A    Yes.
22         Q    Who is the owner of EOS Holdings USA,
23    Inc.?
24         A    EOS International.
25         Q    Does EOS Holdings USA, Inc. hold Collecto,
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 105

```
 1                          John Burns
 2    Inc.?
 3         A    Yes.  EOS Holding is the company that owns
 4    all of the assets of -- in the corporation, Collecto
 5    and all of the other subsidiaries are all owned by
 6    the same entities. Our trade name is EOCCA, Collecto
 7    does business as EOS so EOS is the entity that it is
 8    all rolls up to.
 9         Q    So there is a corporation called EOS
10    Holdings USA, Inc., correct?
11         A    Right.
12         Q    And that owns a corporation called
13    Collecto, Inc., correct?
14         A    As well as others, yes, other companies.
15         Q    What other companies besides Collecto,
16    Inc. does EOS Holdings USA, Inc. hold?
17         A    Well, any -- True North, California
18    Service Bureau, Pace Financial Services, ACA
19    Healthcare Receivables, Afford- A- Care, Inc. There
20    are several entities, mostly through acquisitions
21    that were made by EOS Holdings.  They made
22    acquisitions, made the acquisition of Collecto, so
23    to speak, but all of the other entities are all
24    separate corporations that are all part of the
25    consolidated entity.
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 106

 1                          John Burns

 2       Q    Let me get this clear in my mind.

 3                 You have the holding company called

 4   EOS Holdings, USA, Inc. that owns Collecto, Inc.,

 5   correct?

 6       A    Yes.

 7       Q    And now Collecto, Inc. owns that list of

 8   other entities that you just described, correct?

 9       A    In some cases some of those entities might

10   be owned by another subsidiary.  When we bought

11   certain companies, they had their own subsidiaries

12   and it all rolls up to EOS Holdings.

13       Q    Do any of those other subsidiaries not

14   fall under the ownership of Collecto?

15       A    Not in this financial statement, no.

16       Q    I am talking about outside of this

17   financial statement?

18       A    Yes.

19       Q    What I am talking about is, I will reask

20   the question.

21                 You have identified a host of other

22   companies moments ago, do you remember that?

23       A    Yes.

24       Q    Are all of those companies owned by

25   Collecto?

Electronically signed by Anita Shemen (101-390-802-5107)                d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 107

1                         John Burns

2      A      Again, Collecto owns True North, True

3   North, owns Pace Financial, so indirectly, they all

4   pyramid up to EOS Holdings, but who owns what is --

5   you know, so when you say that, it isn't totally

6   accurate.

7      Q      When they are pyramiding up to EOS

8   Holdings, do they pyramid through Collecto?

9             MR. ELLIOT:  Objection to form.

10     A      Those that appear in this financial

11  statement, yes.

12     Q      Irrespective of this financial statement,

13  are there any of the companies that you just listed

14  that are not owned in some way by Collecto?

15             MR. ELLIOT:  Objection to form.

16     A      There are some companies that are managed,

17  but are not part of the financial entity EOS

18  Holdings, USA.

19                 So the company provides management

20  services for some of the other companies, they are

21  owned directly by EOS International.

22     Q      These other companies that we are talking

23  about are they all corporations?

24     A      Yes.

25     Q      Those corporations, does Collecto, Inc.

Electronically signed by Anita Shemen (101-390-802-5107)                d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 108

1                        John Burns

2    have an interest in each one of those other

3    corporations?

4         A    No, not financial interest, no.

5         Q    Okay.

6              Is there some other interest in those

7    companies?

8         A    We provide management services.  The

9    company bought an organization in Brazil and it is

10   managed by a director who is on the board of

11   directors of Collecto.  None of the financial

12   information, none of the results come through this

13   entity, they are all direct to Germany.

14             The company bought a few years ago a

15   company in Canada that is EOS Canada, and that is

16   owned directly by the parent company and managed by

17   us being EOS, you know, CCA, they manage the

18   Canadian company we don't own it, it is owned by the

19   parent company inc Germany.

20        Q    Does EOS Holding USA, Inc. collect debts?

21        A    No, not that company directly.  All of the

22   debt collection is done by Collecto, EOS, whatever

23   the licensed name is in whatever jurisdiction.

24        Q    Does EOS Holdings USA do any business

25   whatsoever?

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 109

```
 1                       John Burns

 2       A     Direct business?

 3       Q     Yes, sir.

 4       A     Other than buying Collecto and overseeing

 5  Collecto and its subsidiaries, they don't do direct

 6  business.

 7       Q     So they are a holding company?

 8       A     Yes.  That is the entity that files the

 9  tax returns, this is the entity that -- where

10  everything is consolidated.

11       Q     Does EOS Holdings USA have any employees?

12       A     Not separately.  I mean, there is a board

13  of directors which is has four or five German

14  representatives and a representative from the U.S.,

15  but I don't classify them as employees.  I don't

16  know, but I think their compensation comes from the

17  parent company in Germany.

18       Q     The board of directors of ESO USA is that

19  a different board than Collecto?

20       A     There are some differences.

21       Q     They are separate corporations, correct?

22       A     Yes.

23       Q     And are there minutes taken at corporate

24  meetings for Collecto, Inc.?

25       A     Yes, I assume so.
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 110

1                        John Burns

2      Q    Are there minutes kept at corporate

3   meetings of EOS USA?

4      A    I don't know if they have separate

5   minutes, I have not seen them.

6      Q    It is a different board of directors

7   between EOS Holdings USA and Collecto, correct?

8      A    Well, I think there is one difference

9   between.  There may be some people in the EOS board

10  that are not on Collecto and there may be somebody

11  who is on Collecto that is not on the other board,

12  there may be one or two differences.

13     Q    I think you said that there were four

14  German members of the EOS Holdings USA?

15     A    The CEO, there are two U.S. people who are

16  on the Collecto board.  There are board of directors

17  for the other entities also and that can vary and

18  the directors of EOS Holdings is a certain board,

19  and then the parent company has a different board of

20  directors, some of which may be the same people, but

21  they are all individual entities.

22     Q    They are individual entities with

23  different boards, correct?

24     A    Yes.

25     Q    Some people may overlap, correct?

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 111

```
 1                         John Burns

 2      A    Yes.

 3      Q    Some are on other boards, correct?

 4      A    Yes.

 5      Q    Generally speaking, they are comprised of

 6  different people?

 7      A    There are no two entities that have the

 8  same board entirely, I believe.

 9      Q    Does Collecto, Inc. hold regular board

10  meetings?

11      A    Yes.

12      Q    And does EOS Holdings USA hold regular

13  board meetings?

14      A    Yes.

15      Q    Do you know what the phrase net worth

16  means in terms of financial statements?

17      A    Yes, I have an understanding of that.

18      Q    What is your understanding as to what the

19  phrase net worth means in the context of a company?

20           MR. ELLIOT:  Object to the form.

21      A    The net worth is normally the assets minus

22  the liabilities of the corporation, and you have got

23  various types of net worth, so it can be a book net

24  worth, it can be a regulatory net worth where

25  calculations are done which excludes certain assets.
```

Page 112

1                        John Burns

2    It could be liquidation net worth. There are

3    different categories of net worth when one is doing

4    a financial report.

5         Q    What category of net worth would be

6    reflected in Plaintiff's Exhibit No. 11?

7         A    U.S. GAAP net worth.

8         Q    Is that book value net worth?

9         A    Book value is just another term.  Book

10   value usually relates to certain assets.

11        Q    Correct me if I am wrong, I think you said

12   that Plaintiff's Exhibit 11 was created using the

13   U.S. GAAP standard, right?

14        A    Yes.

15        Q    Does GAAP stand for?

16        A    Generally accepted --

17        Q    Generally accepted accounting principals?

18        A    Yes.

19        Q    Calling your attention to page 25 of

20   Plaintiff's Exhibit 11?

21        A    Yes.

22        Q    What is that document?

23        A    It is a summary document showing the

24   intercompany adjustments to get to the consolidated

25   financial numbers.

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 113

1                          John Burns

2        Q    Is it fair to say that that is a

3    consolidated balance sheet?

4        A    I think that is what it is called, yes.

5        Q    Is it fair to say that on that page you

6    have four different columns of information?

7        A    Yes, yes.

8        Q    And the second column relates to the

9    information as it pertains to the corporate entity

10   Collecto, Inc., correct?

11       A    Yes.

12       Q    Looking just at that column of

13   information, Collecto, Inc., can you tell me what

14   the total assets are for Collecto, Inc. reflected on

15   this balance sheet is?

16       A    84,959,306.

17       Q    Can you tell me what the liabilities of

18   Collecto, Inc. are?

19       A    19,278,862.

20       Q    All right.

21            And what is the total equity of

22   Collecto, Inc as reflected on this balance sheet?

23       A    65,680,444.

24       Q    Are you familiar with the phrase goodwill?

25       A    Yes, I am.

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 114

```
 1                      John Burns
 2      Q    What does goodwill mean?
 3      A    Goodwill means that it is an asset that is
 4  based on some assumed value for an asset that was
 5  acquired, it is not tangible, there is no -- it is
 6  just the value placed on an asset that was achieved
 7  by the corporation.
 8      Q    There is a goodwill number appearing in
 9  Plaintiff's Exhibit 11, correct?
10      A    Yes.
11      Q    What is that number?
12      A    The goodwill is 32,706,493.
13      Q    Do you know how that number was comprised?
14      A    I believe it is in the further detail of
15  the financial report, but basically when a
16  corporation was acquired by EOS Holding, there were
17  values set on specific assets of the corporation,
18  and any amount of money that was paid above what the
19  hard value of those assets would be deemed to be
20  goodwill.
21               So if we bought receivables, bought
22  office equipment, bought any tangible item and after
23  you deducted that part from the total purchase
24  price, you arrive at a number that was assigned or
25  identified as goodwill.
```

Electronically signed by Anita Shemen (101-390-802-5107)          d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

                                                          Page 115

 1                        John Burns

 2        Q    Is that number compiled as a result of

 3   some business combinations?

 4        A    Yes, yes.  When an acquisition is made,

 5   anything that cannot be identified as a hard asset

 6   is assumed to be goodwill.  You are paying for

 7   something beyond the book value.

 8        Q    And the generally accepted accounting

 9   principals would require that that goodwill figure

10   that is the result of a business combination be

11   reflected on a balance sheet, right?

12             MR. ELLIOT:  Objection to form.

13             MR. MAURO:  I will rephrase the question.

14        Q    What is your understanding about when the

15   generally accepted accounting principals require the

16   reporting of goodwill on a balance sheet?

17             MR. ELLIOT:  Objection.

18        A    If there is an acquisition of assets, it

19   is a calculation that is done once the breakdown of

20   the purchase is booked in the book value of the

21   corporation.

22             MR. MAURO:  Can you mark that as the next

23        Exhibit.

24                   (Exhibit 13 marked for

25   identification, as of this date)

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 116

```
 1                         John Burns

 2       Q    I have placed in front of you what has

 3   been marked as Plaintiff's Exhibit 13.

 4       A    Yes.

 5       Q    Have you seen this document before?

 6       A    Yes, I have.

 7       Q    On page two, do you see a signature line?

 8       A    Yes.

 9       Q    Is it your signature on there?

10       A    No.

11       Q    I am sorry, page three?

12       A    Yes.

13       Q    Did you sign that document, sir?

14       A    Yes.

15       Q    Did you read it before you signed it?

16       A    I did, yes.

17       Q    Okay.

18                 I call your attention to the answer

19   that is given to interrogatory No. 1. Is that an

20   accurate representation of how goodwill was compiled

21   for the sake of this balance sheet, Plaintiff's

22   Exhibit 11?

23       A    The figure that is in the interrogatory is

24   the same figure that is on the balance sheet.

25       Q    And is the explanation as to how that
```

Page 117

```
 1                        John Burns
 2   figure was compiled in line with your understanding
 3   of goodwill here in this balance sheet?
 4        A    I believe it is, yes.
 5        Q    That interrogatory applied if you can see
 6   to Plaintiff's Exhibit No. 12 which is a previous
 7   years balance sheet, financial statement, do you see
 8   that, sir?
 9        A    What is your question?
10             MR. MAURO:  I will reask the question.
11        Q    Let me call your attention to Plaintiff's
12   Exhibit No. 12 page 29.
13             Before we do that, what is
14   Plaintiff's Exhibit No. 12?
15        A    It is a copy of the audited financial
16   statements of EOS for the years 2012, 2011.
17        Q    This financial statement was created the
18   same way that the Plaintiff's Exhibit 11 was
19   created, correct?
20        A    That is correct.
21        Q    And for the same purposes, correct?
22        A    Yes.
23        Q    Calling your attention to Page 29 of
24   Plaintiff's Exhibit 12, you will see that the column
25   -- the figure for goodwill as contained in the
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 118

```
 1                        John Burns

 2    Collecto column is 32,706,493, correct?

 3         A     Correct.

 4         Q     That is the same goodwill figure that

 5    appears on the about the sheet contained within

 6    Plaintiff's Exhibit 11, correct?

 7         A     Correct.

 8         Q     And the interrogatory request that is

 9    contained within Plaintiff's Exhibit 13 is actually

10    referring to the goodwill figure that applies to

11    Plaintiff's Exhibit No. 12, do you see that, sir?

12         A     Yes.

13         Q     Okay.

14               Is it your understanding that that

15    goodwill figure of 32,706,493 has been consistent

16    over the last five years?

17         A     I don't know how long the last entry that

18    would have effected that was the purchase of the

19    company known as True North, and I think that was

20    less than five years ago.

21         Q     Okay.

22               Is it fair to say that that goodwill

23    figure has not changed since the creation of

24    Plaintiff's Exhibit No. 12?

25         A     Not yet.
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 136

```
 1                         John Burns

 2              We have a group that does medical

 3     billing, we have a group that does as I say client

 4     service work, so when you refer to Collecto, you are

 5     referring to a lot of different businesses that all

 6     do work related to accounts receivable and not

 7     purely collection work on specifically delinquent

 8     accounts.

 9        Q    With respect only to the folks contained

10     within Plaintiff's Exhibit No. 8, they were all

11     former students of New York Tech, correct?

12        A    I would assume so.

13        Q    With respect to those students, is it fair

14     to say that the collection methods used were the

15     standard methods of Collecto that you identified

16     moments ago?

17              MR. ELLIOT:  Objection to form.

18        A    Yes.

19        Q    So letters and phone calls, correct?

20        A    Those are the two main areas of focus.

21        Q    We identified earlier that there were

22     different percentages that were applied to different

23     students contained within Plaintiff's Exhibit eight,

24     correct?

25        A    Yes.
```

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

Page 137

1                          John Burns

2        Q    Okay.

3                     Did the percentages that were applied

4    to those students bear any relationship to the

5    actual cost of collecting from those students?

6        A    No, it didn't cover the cost of collecting

7    from those students. percentages.

8        Q    Did the amount of costs that Collecto was

9    attempting to collect from these students for

10   collection costs bear any relationship to the actual

11   cost of collection that either you or New York Tech

12   incurred?

13                    MR. ELLIOT:  Objection.

14       A    Could you define what the actual costs of

15   collection is?

16       Q    What I am referring to by that phrase is

17   the actual out of pocket money that it costs either

18   you or New York Tech to collect that debt so using

19   that definition?

20                    MR. ELLIOT:  Objection to form.  If you

21          can make sense of it, you can answer.

22       Q    Using that definition that you just asked

23   me for, using the definition, sir, that you just

24   asked me for that I relayed to you, do you know

25   whether the amount of money that you attempted to

Electronically signed by Anita Shemen (101-390-802-5107)                d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

CHAIT DIGITAL                888-978-4336                chaitdigital.com

Page 138

```
 1                    John Burns
 2   collect from the students contained within
 3   Plaintiff's Exhibit eight for collection costs bears
 4   any relationship to the actual cost of collection of
 5   Collecto or New York Tech?
 6        A    No.
 7             MR. ELLIOT: Objection to form.  You can
 8        answer.
 9        A    I would assume that the actual collection
10   costs that we incurred to collect those moneys was
11   probably higher than the amount of money we
12   collected.
13        Q    Let's take a look at Plaintiff's Exhibit
14   No. 2 which is the collection letter that you sent
15   to Dave Annunziato, do you see that document, sir?
16        A    I saw it previously when you had it out.
17        Q    Thank you.
18             Is it fair to say that the collection
19   cost that Collecto was attempting to collect from
20   Dave Annunziato was 1,382.79?
21        A    That is the amount that the client
22   anticipated paying us for a successful collection of
23   the account.
24        Q    And what --
25        A    So we represent on the letter what the
```

CHAIT DIGITAL                888-978-4336                chaitdigital.com

Electronically signed by Anita Shemen (101-390-802-5107)                    d0bb0e35-b5d7-4c78-b7e3-b31f85a2bbb0

CHAIT DIGITAL                888-978-4336              chaitdigital.com

Page 139

 1                         John Burns

 2   amount is that the client has directed us to charge

 3   for purposes of covering the cost of the collection.

 4        Q    I understand if your testimony moments ago

 5   that you would assume that the cost of collecting

 6   that debt from Dave Annunziato was higher than the

 7   1,382,79, correct?

 8             MR. ELLIOT:  Objection to form.

 9        A    The problem is you have not identified

10   what is included in collection costs.  Does it

11   include the rents that we pay, does it include the

12   utilities we pay, does it include the cost of the

13   staff, does it include the cost of the receptionist,

14   does it include the marketing department, the

15   cleaning people that come in and clean the office

16   are all of those costs part of the collection?

17        Q    Do you believe that a consumer should pay

18   those costs for a collection agency?

19        A    I think a --

20             MR. ELLIOT:  Objection.

21        A    I think the consumer should pay the bill

22   if it is a legitimate bill, I think they should pay

23   the bill.

24        Q    When you seek collection costs, when you

25   sought collection costs of 1,382.79 from Dave

CHAIT DIGITAL                888-978-4336              chaitdigital.com